IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| YUNEK MOORE,<br>    Plaintiff,<br><br>v.<br><br>OFFICER AMY DOTSON, a City of Peoria, Illinois Police Officer, in Her Individual Capacity, OFFICER CRAIG WILLIAMS, a City of Peoria, Illinois Police Officer, in His Individual Capacity, OFFICER THOMAS BOND, a City of Peoria, Illinois Police Officer, in His Individual Capacity, and the CITY OF PEORIA, ILLINOIS, a Local Governmental Entity,<br>    Defendants. | Case No. 1:14-cv-01220-JES-JEH |

## ORDER AND OPINION

Now before the Court is the Defendants' Rule 56(a) Motion for Summary Judgment. For the reasons stated herein, the Defendants' Motion [19] is DENIED.

### PROCEDURAL HISTORY

In 2013, Yunek Moore was charged as a juvenile with Resisting a Peace Officer in violation of 720 ILCD 5/31-1. (Doc. 20-7). Moore was placed on twelve months of court supervision after a judge found that the State had met its burden during a stipulated bench trial. (Doc. 20-8, 20-9). A year later, on June 4, 2014, Moore filed the instant case against Defendants, Officers Dotson, Williams, and Bond, stating a §1983 excessive force claim and a state law battery claim. The Plaintiff also states a *respondeat superior* claim against the City of Peoria. The Plaintiff seeks compensatory damages from all Defendants, collectively, and punitive

1

damages from each Defendant Officer individually. Defendants filed their instant Motion for Summary Judgment on September 17, 2016.

## STATEMENT OF FACTS

On June 4, 2013, Plaintiff Yunek Moore, who was then seventeen years old, was at a bonfire party with several other recent high school graduates. The partygoers, around fifty individuals and most under the age of twenty-one, were celebrating the departure of two of their friends into training for the Army National Guard. One of these individuals, Cipriana Monteddeoca, lived at the residence where the party was held. At some point during the party, a neighbor called the police. Police were dispatched to the residence, 3819 N. Lynwood Place, Peoria, Illinois, to investigate possible underage drinking and loud music.

Around 10:30 p.m., Officers Dotson, Bond, and Williams, all City of Peoria Police Officers, arrived and began their investigation. (Doc. 24-2, p. 11). After obtaining permission from the homeowner the officers travelled to the back yard of the residence where the party was taking place. Officer Dotson used a bright flashlight to navigate through the yard. Officer Dotson stated that the flashlight was shining at the ground, but was several hundred lumens. (Doc. 24-2, p. 22).

The light from the flashlight caught Yunek Moore's eyes. Moore expressed some annoyance at the bright light, saying something along the lines of "This light it bright" or "Get that light out of my face!" (Doc. 24-1, p. 7, at 24-25; Doc. 24-2, p. 26, 31; Doc. 20-11, p. 40-41). It is disputed what Moore said or how much she said after that. What is not disputed is that Officer Dotson then approached Moore and asked for identification, but Moore did not comply. Next, Moore was either asked to stand or taken by the wrist and forced to stand. Moore resisted. Officers Bond and Williams became involved in this interaction, each taking hold of both her arm and wrist. (Doc. 24-2, p. 46). After Moore was forced into a standing position, the

2

Defendant Officers escorted Moore to the front yard using a pain compliance technique, and Officer Dotson handcuffed her while she was on top of the hood of the police car. After the officers brought her to the front yard and eventually placed her into a squad car, she was transported to the Peoria County Jail.

    I.        **Disputed Facts**

According to Officer Dotson, she was in her full police uniform at the time of the incident. (Doc. 24-2, p. 29). Conversely, the Plaintiff stated that she could not see the uniforms and could not see due to the bright light in her eyes. (Doc. 24-1, p. 8, at 26). Dotson had asked to see identification because of Moore's loud behavior and because Moore was holding a red cup, although Officer Dotson never asked to see what was in the cup. (Doc. 24-2, p. 29, 33). Dotson remembers Moore yelling and using language; and that Moore continued to express annoyance even when told by someone in the crowd to quiet down because it was the police. (Doc. 24-2, p. 29, 34, 42). Dotson stated that she arrested Moore because after several requests to get Moore to provide her identification, Moore was obstructing the police investigation. (Doc. 24-2, p. 30, 69). Dotson intended to escort Moore to the front yard because she was inciting the crowd of partygoers. (Doc. 24-2, p. 40). The officers testified that that when Moore resisted, they brought her to a standing position. The officers admit that they used a standard handshake control involving applying pain compliance. (Doc. 20-3, p. 51-52, 81). According to Officer Williams, he was the officer who told Moore she was under arrest. (Doc. 24-2, p. 30).

Importantly, on the way to the police car, Moore claims that she was slammed into the side of the house, and was soon after slammed into the hood of the squad car before she was handcuffed. Moore claims that as a result of these maneuvers, she required surgery for her shoulder and two surgeries for her resulting wrist problems. According to Officer Williams,

however, Moore did not make contact with the house. (Doc. 20-3, p. 64). Rather, Officer Bond struck his elbow on the side of the house while walking Moore to the front. Officer Williams further stated that Moore was leaned over the hood of the squad car in order for the officers to get more leverage to handcuff her. (Doc. 20-3, p. 67-68).

Cipriana Montesdeoca stated that the officers dragged Moore, pushed her up against the side of the house while taking her through the pathway to the front of the house. (Doc. 20-12, p. 52). According to Cipriana, the more Moore tried to get away from the officers, the more the officers pushed her against the side of the house. (Doc. 20-12, p. 55). Moore told them to stop, and explained that they were hurting her. (Doc. 20-13, p. 74-75). Cipriana also testified that she saw the police slam Moore against the passenger door of the police car. (Doc. 20-12, p. 57-58). Another deposed witness, Ezra Murray, testified that the slam against the house resulted as a natural consequence of Moore's resistance. (20-17, p. 41-42).

In their Motion for Summary Judgment, the Defendants claim that the following facts are undisputed:

3. Office Amy Dotson did not physically place Plaintiff under arrest on June 4, 2014, nor did she participate in removing Plaintiff from the residence at 3819 N. Lynwood Place, Peoria, Illinois.
4. Jovanni Montesdeoca, the son of the homeowner of 3819 N. Lynwood Place, witnessed Plaintiff physically resisting the Defendant Officers' arrest of Plaintiff on June 4, 2013.
5. Cipriana Montesdeoca, the daughter of the homeowner of 3819 N. Lynwood Place, Peoria, Illinois, witnessed Plaintiff physically resisting the Defendant Officers' attempts to arrest her on June 4, 2013.

(Doc. 19, at 3-4).

In response, the Plaintiff disputes paragraphs 3 through 5. According to the Plaintiff, Amy Dotson testified she placed her hand on Moore's arm and placed her under arrest. The Plaintiff also argues that Dotson had arrested Moore for obstructing her investigation by not

4

providing identification, and Officer Bond took over her left wrist when Dotson could not manage her. Therefore, according to Plaintiff, Officer Dotson began to participate in arresting and removing Plaintiff from the residence. (Doc. 24-2, p. 30, 77).

The Court notes that in her deposition, Officer Dotson stated that she placed Moore under arrest for hindering the police investigation and that she grabbed Moore's left wrist. (Doc. 24-2, p. 39, 40, 72). Because Officer Dotson herself testified that she made physical contact and made a decision to place Moore under arrest, the Court finds that although this is an undisputed fact, it clearly is not undisputed as set out in Defendant's Motion. Further, the Court finds that paragraphs 4 and 5 are not undisputed facts for purpose of summary judgment because, as Plaintiff indicates, the Defendants fail to cite to any evidence in the record to support these facts. Fed. R. Civ. P. 56(c)(1)(A); CD-IL Rule 7.1(D)(1)(b).

## DISCUSSION

Defendants filed their instant Motion for Summary Judgment, and argue that Moore's juvenile adjudication precludes her § 1983 claims because her claims would invalidate the conviction, in tension with the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994). The Defendants also argue that Amy Dotson cannot be liable for excessive force or common law battery. Finally, the Defendants argue that they have immunity on common law battery under the Illinois Tort Immunity Act.

**II.     Legal Standard**

A motion for summary judgment will be granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A material fact is one that might affect the outcome of the suit. *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 598-99 (7th Cir. 2000). The moving party may meet its burden of showing an absence

of material facts by demonstrating "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  If the moving party meets its burden, the non-moving party then has the burden of presenting specific facts to show there is a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

On summary judgment, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 588.  Any disputed issues of fact are resolved against the moving party. *GE v. Joiner*, 552 U.S. 136, 143 (1997).  The moving party has the responsibility of informing the Court of portions of the record or depositions that demonstrate the absence of a triable issue. *Celotex Corp.*, 477 U.S. at 323.  Federal Rule of Civil Procedure 56(e) requires the non-moving party to go beyond the pleadings and produce evidence of a genuine issue for trial. *Id*. at 324.  Where a proposed statement of fact is supported by the record and not adequately rebutted, a court will accept that statement as true for purposes of summary judgment; an adequate rebuttal requires a citation to specific support in the record. *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998).  This Court must then determine whether there is a need for trial; whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may be reasonably resolved in favor of either party. A*nderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

**III. Analysis**

    **A.** *Heck v. Humphrey* **Bar**

The Defendants argue that the Plaintiff stipulated to facts to resisting a peace officer, meaning she pleaded guilty.  According to the Defendants, this means that Moore admitted she

knowingly and physically resisted or obstructed a person known to be a peace officer performing an authorized act. Defendants argue that if the Plaintiff were to succeed under her §1983 claims, this would invalidate her juvenile conviction, and would be in tension with the Supreme Court's holding in *Heck v. Humphrey*, 512 U.S. 477 (1994).

According to the Supreme Court's decision in *Heck*, a civil claim is barred if it implies the invalidity of the Plaintiff's conviction stemming from the same incident with the police, or where judgment for Plaintiff would create "two conflicting resolutions arising out of the same or identical transaction." 512 U.S. at 484. An individual convicted of resisting arrest is not necessarily *Heck*-barred from maintaining an excessive force claim arising from the same confrontation. *McCann v. Neilsen*, 466 F.3d 619 (7th Cir. 2006); see also, *Nelson v. Campbell*, 541 U.S. 637, 647 (2004) (noting that "we were careful in *Heck* to stress the importance of the term 'necessarily'"). The Seventh Circuit has stated that upholding *Heck* in certain resisting arrest cases "would imply that once a person resists law enforcement, he has invited the police to inflict any reaction or retribution they choose, while forfeiting the right to sue for damages." *VanGilder v. Baker*, 435 F.3d 689, 692 (7th Cir. 2006), and *McCann*, 466 F.3d at 621.

The Plaintiff's stipulation to facts in her juvenile case does not create a *Heck* bar to her claims of excessive force and common law battery. At Moore's Stipulated Bench Trial on October 12, 2016, the judge found that the government met its burden with its proffer of evidence. Moore was charged with resisting a peace officer. The statute states the following:

> A person who knowingly resists or obstructs the performance by one known to the person to be a peace officer, firefighter, or correctional institution employee of any authorized act within his or her official capacity commits a Class A misdemeanor. 720 ILCS 5/31-1.

Moore could prove that the force used in effecting her arrest was excessive, or that the force employed by the officers was unreasonable; this would not necessarily imply the invalidity

7

of the conviction for resisting a peace officer. Nor does the Plaintiff make factual allegations in her Complaint that would "necessarily imply" the invalidity of Moore's conviction for resisting a peace officer.

An excessive force claim that arises under the Fourth Amended is analyzed under the reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). The reasonableness test involves a balancing of "the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id*. at 396 (citations omitted). This is a factual inquiry, taking into consideration the circumstances of each particular case; reasonableness of the force is determined from the "perspective of a reasonable officer on the scene." *Id*.

Because the issue of the force used by the defendant officers against Moore is separate and distinct from the issue of whether Moore resisted arrest, Moore's excessive force claim is not barred by *Heck*. The Defendants are therefore not entitled to summary judgment under *Heck*.

### B. Officer Amy Dotson

The Defendants argue that Officer Dotson cannot be liable for excessive force because she made no contact with the Plaintiff during her arrest. As stated above, excessive force claims are evaluated with the reasonableness standard. This is a factual inquiry, which depends upon the circumstances surrounding the use of force and is determined from the "perspective of a reasonable officer on the scene." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

A genuine issue of fact remains as to whether Officer Dotson is liable for excessive force. It is not disputed Officer Dotson took hold of Moore's left wrist. According to Officer Dotson's deposition, she grabbed Moore's left wrist due to her "noncompliance and refusal to provide identification." (Doc. 24-2, p. 72). She attempted to make Moore stand. According to Moore, a female officer and a male officer "yanked" her out of her chair. (Doc. 24-1, p. 10 at 34). After

8

Officers Williams and Bond took hold of Moore, Officer Dotson handled the crowd (Doc. 24-2, p. 58, 65), but Officer Dotson was the officer who handcuffed Moore. (Doc. 24-2, p. 66). Therefore, because a jury may find that Officer Dotson used excessive force in her treatment of the Plaintiff, a genuine issue exists and the question must go to the trier of fact.

The Defendants also argue that Officer Dotson cannot be liable for common law battery. According to the Defendants, Dotson only made brief contact with the Plaintiff, which cannot make her liable for battery. In Illinois, battery is "the unauthorized touching of another that offends a reasonable sense of personal dignity." *Chelios v. Heavener*, 520 F.3d 678 (7th Cir. 2008), citing *Cohen v. Smith*, 648 N.E.2d 329, 332 (Ill. App. 1995) (internal quotation marks omitted). Here, the Plaintiff alleged that Officer Dotson grabbed Moore and pulled her from her chair where she was sitting. Thus, this presents a question of fact for the jury of whether Officer Dotson's contact meets the definition of battery. See *Waldridge v. America Hoechst Corp.*, 24 F.3d 918, 920 ("The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial."). Accordingly, the Court finds that Officer Dotson is not entitled to summary judgment on excessive force or common law battery.

### C. Immunity

The Defendants claim that they are entitled to immunity from liability for the common law tort of battery under the Illinois Tort Immunity Act because the Plaintiff has not asserted "willful and wanton conduct." 745 ILCS 10/2-202. The Illinois Tort Immunity Act immunizes the actions of public employees in the execution or enforcement of any law. Public employees are not entitled to immunity if their conduct is willful and wanton, which is defined as "a course of action which shows an actual or deliberate intention to cause harm, or if not intentional, shows

an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1-210. Whether conduct is willful and wanton is a question of fact for the jury, but the Court "must first determine as a matter of law whether there is sufficient evidence for the question to go to a jury." *Driggers v. Sanders*, 2008 WL 5747426, *6 (Jan. 4, 2008).

The Court finds that there is sufficient evidence for the question of whether the officers acted with utter indifference to Moore's safety. A jury could accept Moore's version of events, which include the officers shoving her into the side of the house and onto the hood of the police car. The jury could therefore conclude that the police conduct showed actual or deliberate intention to cause harm, or alternatively, utter indifference to or conscious disregard for her safety. 745 ILCS 1/1-201. Consequently, immunity does not provide a basis for summary judgment on the common law tort of battery claim against the Defendant Officers.

The Plaintiff failed to respond to the Defendants' argument that they are entitled to immunity. However, Court identifies specific facts in the plaintiff's Response and facts contained in the affidavits that support a claim for excessive force. When viewed in the light most favorable to the Plaintiff, the Court finds that these same facts set forth by the Plaintiff similarly show there is a genuine triable issue of whether the officers' conduct was willful or wanton. Therefore, the Defendants are not entitled to immunity at this time.

### D. False Arrest

In the Plaintiff's Response, she argues that the Court should consider a false arrest claim. The Plaintiff argues that the Defendants interpreted this claim as existing in the Complaint. Because the Plaintiff's argument is not articulated and cites a case that offers no guidance to support this contention, the Court is unable to adequately address her argument that this case includes a false arrest claim. Finally, a new claim raised at the summary judgment stage is too

late for the Court to consider. See *Komperda v. Hartfor Life and Accident Ins. Co.*, 2003 WL 21148023, *3 (May 14, 2003), citing *Auston v. Schubnell*, 116 F.3d 251, 255 (7th Cir. 1997). The Court finds that there is no claim for False Arrest in either the Complaint or the Motion for Summary Judgment. (Doc. 19, p. 3).

## CONCLUSION

For reasons stated above, the Defendants' Motion for Summary Judgment (Doc. 19) is DENIED. This matter is now ready for final pretrial conference.

Entered this  26th   day of January, 2017.

s/ James E. Shadid

James E. Shadid  
Chief United States District Judge